**PABST v. LUCAS, Commissioner of Internal Revenue.**

Court of Appeals of District of Columbia. Submitted November 14, 1929. Decided December 2, 1929.

No. 4791.

Harry A. Fellows and Camden R. McAtee, both of Washington, D. C., for appellant.

Mabel W. Willebrandt, Asst. Atty. Gen., and C. M. Charest, L. W. Scott, Andrew D. Sharpe, Donald V. Hunter, and Dorothy A. Moncure, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. The decision herein appealed from is reported in 6 B. T. A. 843.

The appellant appealed to the Board of Tax Appeals from a deficiency letter of the Commissioner of Internal Revenue which showed the status of appellant's tax liabilities for the years 1917 to 1922, as follows: For 1917, a deficiency of $743.45; for 1918, an overassessment of $952.06; for 1919, an overassessment of $3,130.83; for 1920, a deficiency of $10,899.49; for 1921, a deficiency of $758.14; and for 1922 a deficiency of $1,078.81.

In the petition filed by appellant when taking his appeal, it is alleged that the Commissioner had erred as follows:

(a) In refusing to allow as a deduction for 1918 the sum of $18,740, representing a loss sustained by appellant in the cost of stock purchased by him in the Amador Copper & Gold Mining Company.

(b) In refusing to allow as a deduction for 1919, the sum of $10,600, representing a similar loss in the stock of the Al A. Boeck Company.

(c) In refusing to allow as a deduction for 1919 a bad debt loss of $3,795.65, on account of loans made in prior years to one G. Liebman.

(d) In refusing to allow for 1919 a "net loss" under section 204(a) of the Revenue Act of 1918, 40 Stat. 1057, 1060, as an offset against the net income for the year 1920.

(e) In refusing to allow for 1920 a bad debt loss of $1,399.51, on account of loans made in prior years to one R. Cordes.

The appeal was heard by the Board, who sustained appellant's claim for deduction on account of the Liebman and Cordes debts, and denied the remaining claims. The Board redetermined the deficiencies as follows: For 1920, $10,366.21; for 1921, $758.14; for 1922, $1,078.81. The present appeal was then taken.

In this appeal appellant claims that the Board erred in redetermining a deficiency of $10,366.21, for the year 1920. He also alleges that he did not appeal from the Commissioner's determination of deficiencies for the years 1921 and 1922, and consequently that the Board had never acquired jurisdiction to make any redeterminations for those years. He claims therefore that the redeterminations for 1921 and 1922 are void.

Appellant's first contention is that in the year 1919 he sustained a net loss within the purview of sections 204(a) and 204(b) of the Revenue Act of 1918, which should have been allowed by the Board as a deduction in com-

puting his net income for the year 1920. This contention does not demand a redetermination of appellant's net income for 1919, per se, for no deficiency was found in that year, and consequently the year did not come directly within the jurisdiction of the Board in this case. Nevertheless appellant claims that the net income for 1919 becomes relevant respecting the assessment for 1920, under the provisions of sections 204(a) and 204(b), of the Revenue Act of 1918.

The material part of section 204(a), relied upon by appellant, reads as follows: "That as used in this section the term 'net loss' refers only to net losses resulting from  *  *  * the operation of any business regularly carried on by the taxpayer,  *  *  * and when so resulting means the excess of the deductions allowed by law  *  *  * over the sum of the gross income plus any interest received free from taxation.  *  *  *"

The applicable part of section 204(b) reads as follows: "If for any taxable year beginning after October 31, 1918, and ending prior to January 1, 1920, it appears  *  *  * that any taxpayer has sustained a net loss, the amount of such net loss shall  *  *  * be deducted from the net income of the taxpayer for the preceding taxable year;  *  *  * If such net loss is in excess of the net income for such preceding taxable year, the amount of such excess shall  *  *  * be allowed as a deduction in computing the net income for the succeeding taxable year."

Accordingly, the "net loss" thus provided for is one resulting only from the operation of a business regularly carried on by the taxpayer, and, when so resulting, means the excess of the deductions "allowed by law" over the sum of the gross income of the taxpayer for the taxable year, plus tax-free interest received by him. The "net loss" thus ascertained shall be deducted from the net income of the taxpayer for the preceding taxable year, and, if in excess of such income, the amount of the excess shall be allowed as a deduction in computing the net income for the succeeding taxable year.

The record discloses that in the years 1918, 1919, and 1920, appellant was engaged "in the business of manufacturing pharmaceutical preparations for sale and in the mining business as an operating owner of mines of various kinds and as an investor in mining enterprises." In the year 1919 appellant's return showed his net income, "from business or profession," to be $78,246.60. As against this income, the Board allowed deductions under the general provisions of section 214(a), in the aggregate amount of $104,204.36, showing a net loss of $25,957.76 for 1919. If this net loss had resulted only from the "operation of any business regularly carried on by the taxpayer," as defined by section 204(a), it should be deducted under section 204(b), from appellant's net income for 1918, and, if found to be in excess thereof, the amount of such excess should be deducted in computing appellant's net income for 1920. It appears, however, that certain of the items included in the aggregate allowance of $104,204.36 did not result from the operation of a business regularly carried on by appellant, but were losses resulting from other causes. Among these are the following component items, to wit: Interest paid on personal indebtedness, $7,190.46; personal taxes, $496.84; contributions, $1,090.10; Liebman personal loan, $3,795.65; Harbeck personal loan, $4,000; Gregg personal loan, $800; salaries paid stenographers and bookkeeper handling private affairs, $1,207. None of those losses resulted from the operation of a business regularly carried on by appellant. In addition to the foregoing items, the allowance includes a loss on the "W. S. plant, $1,500," which is totally unexplained, and a "Malaspena Mine loss, $59,868.34," which the board found was not shown by the evidence to be such as is covered by section 204 (a). We think this finding is consistent with the evidence. Appellant's claim for a deduction for 1919 in the sum of $10,600, representing a loss in the purchase of stock in the Al A. Boeck Company, was overruled by the Board on the ground that the stock in question had become worthless and the loss incurred long prior to the year 1919; and the claim for a deduction of $13,802.38, for loss sustained in the settlement of the business of Al A. Boeck Company was disallowed by the Board on the ground that the business of that company was not a "business regularly carried on" by appellant. These findings are sustained by the evidence.

These facts make it unnecessary to consider or pass upon appellant's claim for a deduction of $18,740 for 1918, because of his alleged loss in the Amador Copper & Gold Mining Company, inasmuch as appellant failed to establish a "net loss" for the year 1919 under section 204(a).

We are of the opinion also that the years 1921 and 1922 were included within the appeal taken by appellant from the Commissioner to the Board. The deficiency letter sent by the Commissioner to appellant contained the following statement: "An examination of your income tax return for the years 1917 to 1922, inclusive, discloses over-

assessments for 1918 and 1919, and a deficiency in tax for each of the years 1917, 1920, 1921 and 1922, the details of which are set forth in the attached statements."

In the "attached statements" the Commissioner showed the deficiencies for 1921 and 1922, respectively, to be $758.14 and $1,078.81.

The petition then filed by appellant with the Board as the basis of the appeal states: "The taxes in controversy are income taxes for the calendar years 1917, 1918, 1919, 1920, 1921 and 1922, and are more than $10,000, to wit, $3,955.32 for 1918 and $10,306.11 for 1920."

No specifications were contained in the petition relative to the years 1921 and 1922, nor was any testimony submitted to the Board concerning them. Nevertheless we think that the correct import of the record is that the appeal carried with it the years 1921 and 1922, and that the right of the Commissioner to make assessments for these years was suspended thereby until the redeterminations of the Board were made. Upon this record the Board was justified in sustaining the determinations of the Commissioner for these years.

The decision appealed from is accordingly affirmed, with costs.